IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. MICHAEL GILL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 18 C 6494 |
| | ) | |
| v. | ) | Judge Steven Seeger |
| | ) | |
| CVS HEALTH CORP. et al., | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The defendants' "Motion to Compel Plaintiffs to Answer Certain Interrogatories and Requests for Admission" [Dkt. #252] is granted in part and denied in part. The plaintiffs shall provide proper, straightforward, non-prolix, non-referential answers to the defendants' interrogatories as explained in the following memorandum opinion and order in thirty days.[1]

**I.**

Discovery has been an ongoing struggle in this five-and-a half-year-old *qui tam* case, with the current episode of the saga being the defendants' motion to compel the plaintiff/relator and the State of Delaware to provide "straightforward, responsive answers" to a number of interrogatories and requests to admit. More specifically, we are talking about Interrogatories Nos. 6–12, 15, and 17

---

[1] The defendants wanted the plaintiffs to pare down all their nearly double-digit-page answers in just fourteen days. That was a bit fanciful, especially in this case. Indeed, thirty days might be overly hopeful, although it is the amount of time allowed under Fed.R.Civ.P. 33(b)(2). Things have never exactly moved along at a break-neck pace in this litigation. And, it will be a fair amount of work for the plaintiffs to do, especially since they – along with the defendants – are already engaged in cleaning up a couple of other extensive, post-discovery-deadline messes – there's a Greek myth about stables that comes to mind – involving the defendants' massive, 20,000-entry privilege log and the defendants' claims of privilege over documents relating to what the plaintiffs call the defendants' "Coram Overpayment Scheme."

from defendants' Second Set of Interrogatories to the relator; Requests for Admission Nos. 2, 3, 16, and 17 from defendants' First Set of Requests for Admission to the plaintiff; Interrogatories Nos. 1–6 from defendants' First Set of Interrogatories to the State of Delaware; and Requests for Admission Nos. 2, 3, 16, and 17 from defendants' First Set of Requests for Admission to the State of Delaware. The plaintiffs ( the relator and Delaware) needed two months instead of the default 30 days to respond and when they did, defendants thought their responses were such that they merited a nine-page, single-spaced "deficiency" letter. Defendants probably rue the sending of that letter because it prompted the plaintiffs to provide responses so lengthy that the defendants found it difficult to find actual answers to their interrogatories embedded therein. At that point, the defendants tell us, the parties met and conferred twice regarding their nearly two dozen disputes[2], back in the middle of December of last year, which was about a month before defendants filed their motion.

The parties briefed the motion, debated it for a portion of two hearings along with two other motions they had going at the time[3], then agreed – with some encouragement from Judge Seeger – to try and work things out or, at least, whittle things down to manageable chunks of contentiousness. But here we are, looking at 23 pieces of discovery that the parties have been unable to reach any type of an accord over since way back in August 2023. Based on their status report of May 2, 2024, they

---

[2] The court notes that, from time to time, in contentious cases like this one, courts have ordered that the parties record – by video or court reporter – their Local Rule 37.2 meet-and-confer sessions for the court's review. Given the history of this case, and the tone of some of the briefs over the course of that history, it does boggle the mind to imagine what must go during these sessions.

[3] Since February of 2023, there have only been rare and brief occasions when the parties *did not* have some discovery dispute before the court.

haven't even tried. [Dkt. #320, at 1-2].[4] No wonder Judge Posner has rightly lamented that "protracted discovery, [is] the bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir. 2000). *Accord A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986)(we "'must be mindful of the realities of modern litigation. Pre-trial discovery under modern federal practice has become a monster on the loose .... Pre-trial proceedings have become more costly and important than trials themselves.'"). *See also Bond v. Utreras,* 585 F.3d 1061, 1067 (7th Cir.2009); *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998). *See also Flentye v. Kathrein,* 2007 WL 2903128, 2 (N.D.Ill.2007)(Discovery is, like life itself, "'nasty [and] brutish ....' Hobbes, Leviathan, Chapter XIII. Unfortunately, it is not generally short.").

## II.

We start with a handful of general propositions that apply, to one degree or another, to the current dispute, either to the stated expectations of the defendants on the one side or to the objections of the plaintiffs on the other. The main topic here is "contention interrogatories." They aren't specifically mentioned in the Federal Rules of Civil Procedure, but Rule 33(a)(2) makes it plain that

---

[4] The parties' failure in that respect is not surprising given the history of this case and the tone of plaintiffs' response brief which is, as we shall see – and attempting to avoid what the plaintiffs might call a "dysphemism," *see, infra* at fn. 12 – "angry." It's peppered with invectives aimed at the defendants' critique of the plaintiffs' interrogatory responses like "cavils" or "trifles" or "silly", or "risible." A neutral reader might imagine that the plaintiffs were taken aback at the defendants' audacity to have filed a motion to compel of their own after quite a few from the plaintiffs.

It's not uncommon for tempers to grow short when a case drags on and discovery drags on, and that goes for judges and magistrate judges as well, although neither Judge Seeger nor I can file motions for leave to withdraw when we've had enough. [Dkt. ## 39, 146, 182, 197, 203, 241, 279, 311, 315, 323]. But, the plaintiff does seem to be trying to operate in good faith regarding two other discovery disputes the parties continue to haggle over, so the court will make allowances for the tenor of the response brief. But, suffice it to say, when one is part of yet another discovery dispute being brought into court over two dozen discovery requests in a five-and-a-half-year-old case in which one has already heaped hundreds if not thousands of pages of filings regarding other discovery disputes on the court, one probably should dial down the indignation and take a more congenial tone.

"[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Obviously, after years of government investigation and years of discovery, no one can say the contention interrogatories at issue here are premature.

A large portion of the parties' dispute has to do with what a contention interrogatory can ask for. The basic idea of contention interrogatories is to require a party to commit to a position and to give support for that position. *Inojosa v. Bd. of Trustees of City Colleges of Chicago, Cmty. Coll. Dist. 508*, No. 20 C 1114, 2021 WL 4461579, at *3 (N.D. Ill. Apr. 12, 2021); *Abernathy v. Vill. of Park Forest*, No. 16 C 2128, 2018 WL 11651217, at *1 (N.D. Ill. Sept. 18, 2018); *Rejdak v. Worthington Cylinders Wisconsin, LLC*, No. 15 CV 9373, 2017 WL 11885185, at *3 (N.D. Ill. Jan. 23, 2017). Contention interrogatories are "'used to elicit a description of the opposing party's theory and proof to be employed.'" *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C 864, 2019 WL 6498081, at *5 (N.D. Ill. Dec. 3, 2019)(quoting *Tragoszanos v. City of Algoma*, 2011 WL 2650852, at *1 (E.D. Wis. July 6, 2011); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. Evers*, No. 18-CV-992-JDP, 2020 WL 7055883, at *1 (W.D. Wis. Feb. 7, 2020)(". . . in response to a proper contention interrogatory, a party must respond by laying out, in general terms, the basis for its litigation positions."); *Gregg v. Local 305 IBEW*, 2009 WL 1325103, at *6 (N.D. Ind. May 13, 2009) ("Contention interrogatories can be classified as questions asking a party to: indicate what it contends or whether the party makes some specified contention[;] ... state all facts or evidence upon which it bases some specific contention; take a position and apply law and facts in defense of that position; or explain the theory behind some specified contention."); *Milwaukee*

*Elec. Tool Corp. v. Chervon N. Am. Inc.*, No. 14-CV-1289-JPS, 2017 WL 2445845, at *1 (E.D. Wis. June 6, 2017)(allowing contention interrogatory "to learn Plaintiffs' legal theories and the factual bases for their . . . claims"); *see also Sanzare v. QBE Specialty Ins. Co.*, No. 0:23-CV-60013, 2023 WL 4101470, at *3 (S.D. Fla. June 21, 2023)("Contention interrogatories are broadly defined as questions that ask an opposing party to state the facts, evidence, or legal theories upon which it bases its specified contention(s) or that ask[ ] an opponent to explain his or her contention(s)."); *United States ex rel. Long v. Janssen Biotech, Inc.*, No. CV 16-12182-FDS, 2022 WL 4124018, at *6 (D. Mass. Sept. 9, 2022)(allowing for "expansive interrogatory responses that "identify each and every" document and communication relevant to a contention, as well as lists of acts, omissions, persons, and facts . . ."); *Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711 (LJL), 2021 WL 4124661, at *1 (S.D.N.Y. Sept. 9, 2021)(". . . courts generally resist efforts to use contention interrogatories as a vehicle to obtain every fact and piece of evidence a party may sigh to offer concerning a given issue at trial."); *Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, No. 18CIV2442JPCSLC, 2021 WL 423473, at *3 (S.D.N.Y. Feb. 8, 2021)("A contention interrogatory is proper where it asks the party to 'explain the factual bases for [that party's] contentions by providing the material facts upon which they will rely, but not a detailed and exhaustive listing of all the evidence that will be offered."); *TIG Ins. Co. v. Woodsboro Farmers Coop.*, No. 5:18-CV-191, 2020 WL 12573285, at *2 (S.D. Tex. Apr. 7, 2020)("Contention interrogatories should not request 'a detailed and exhaustive list of all evidence . . . , but can request that the opposing party 'explain the factual bases for its [positions].'").

As can be seen from review of the foregoing cases and the case the parties have cited, what courts will allow in a contention interrogatory falls along a broad spectrum of facts and evidence,

and theories and proof.[5]  As such, the plaintiffs' objections are, in the main,  out of line.  For example, the relator repeatedly objects that:

> a contention interrogatory that asks for "each employee and every document or other item of evidence" a party intends to use in the case is improper. *See In re Dealer Mgmt. Sys. Antitrust Litig*., 2019 WL 6498081, at \*6 (N.D. Ill. Dec. 3, 2019).

First of all, the language the relator repeatedly quotes throughout his objections –  "each employee and every document or other item of evidence" – does not even appear in the case.[6]  More importantly, the court in *Dealer Mgmt. Sys*. endorsed contention interrogatories "directed at a specific contention or claim." *Dealer Mgmt. Sys*., 2019 WL 6498081, at \*6.  That's exactly what defendants' interrogatories are: directed at specific contentions or claims.  Interrogatories Nos. 6 and 7 to relator, and Interrogatories Nos. 1 and 2 to Delaware are directed at plaintiffs' claim of scienter regarding Coram's commercial credit balances being swept to income. The same goes for Interrogatories Nos. Nos. 9-12, 15, and 17 to the relator, and Interrogatories Nos. 3-6 to Delaware.  These interrogatories seek supporting facts for specific claims or contention the plaintiffs are

---

[5] Given that courts have exceptionally broad discretion in resolving discovery disputes, *see Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 601 (7th Cir. 2022), that shouldn't be  surprising.  Two courts, faced with similar circumstances could limit or allow contention interrogatories in completely different manners and both be "right." *See, e.g., Mejia v. Cook Cnty., Ill.*, 650 F.3d 631, 635 (7th Cir. 2011); *25 W. Ave. LLC v. Lester*, No. 22 C 2697, 2024 WL 1075213, at \*1 (N.D. Ill. Mar. 12, 2024); *United States ex rel. Gill v. CVS Health Corp*., No. 18 C 6494, 2023 WL 2771166, at \*2 n.2 (N.D. Ill. Apr. 4, 2023); *Bierk v. Tango Mobile, LLC*, No. 19 C 5167, 2021 WL 2681901, at \*3 (N.D. Ill. June 30, 2021). That's why it's very often a futile gesture to draw a line in the sand and cling to a position in a discovery dispute.  Contention interrogatories are no exception.

[6] It might have been due to "operator error" but the court did a couple of searches for the phrase the plaintiff quotes – "each employee and every document or other item of evidence" – in the "All Feds" and "All States" jurisdiction databases on Westlaw and came up empty.  Plaintiffs claim that they were actually relying on the defendants' researching skills.  They explain, without support, that the defendants cited the same language in *their* responses to *plaintiffs'* interrogatories and apparently, plaintiffs didn't bother to take a look at the case on their own before *this* dispute came before the court. [Dkt. #265, at 8 fn. 16].  It's just another example of how, between the two teams of attorneys, the case has definitely taken on an "I-know-you-are-but-what-am-I" sort of playground feel to it.

making. Not a one of them constitute the type of interrogatory the court in *Dealer Mgmt. Sys.* actually condemned: an "all-encompassing and broad request to identify all evidence and documents that support all of an opposing party's claims." *Dealer Mgmt. Sys.*, 2019 WL 6498081, at *6.

Another example would be the plaintiff's repeated – and undeveloped, *see Kinon Surface Design v. Hyatt Int'l Corp.*, No. 19 C 7736, 2021 WL 3511312, at *3 (N.D. Ill. Aug. 10, 2021)("Unsupported, unamplified, boilerplate objections . . . will not be countenanced; they are tantamount to making no objections at all."), objection that:

> the true purpose of the Interrogatory is to ask the Plaintiff to expound upon the mental impressions, conclusions, opinions, or legal theories of Plaintiff's attorney or other representative concerning the litigation. This is an improper use of the discovery process. *See U.S. S.E.C. v. Sentinel Management Group, Inc*., 2010 WL 4977220 at *7 (N.D. Ill. Dec. 2, 2010).

Whatever the "true purpose"of the defendants' interrogatories might be – and we shudder at the thought of policing lawyers' secret motivations in discovery disputes – these objections miss the point of contention interrogatories and Fed.R.Civ.P.33(a)(2) altogether. As explained above, case after case allows requests for legal theories and for application of law to facts. Indeed, the Advisory Committee notes to the 1970 amendments to Fed.R.Civ.P. 26 explain the concept:

> Rule[] 33 ... ha[s] been revised in order to permit discovery calling for opinions, contentions, and admissions relating not only to fact but also to the application of law to fact. Under those rules, a party and his attorney or other representative may be required to disclose, to some extent, mental impressions, opinions, or conclusions.

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1365 (Fed. Cir. 2006)(noting that the rules were amended with the objective of "allowing the parties to discover their opponent's theories of liability"); *Nationwide Mut. Fire Ins. Co. v. Kelt, Inc*., No. 6:14-CV-749-ORL-41, 2015 WL 1470971, at *7 (M.D. Fla. Mar. 31, 2015)("The Notes strongly suggest that an assertion of work-product protection alone is not a sufficient ground for objecting to a contention

interrogatory."); *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985).

But even if that weren't the case, the plaintiffs fail to explain why identification of facts – naming the employees you claim were aware the sweeping alleged, support for he amounts of credit balances claimed, supporting the contention that defendant knew specific claims that it paid for excluded providers, etc. – is somehow an improper use of the discovery process. Even the case the plaintiffs repeatedly cite acknowledged that facts were fair game in discovery. *Sentinel Mgmt.*, 2010 WL 4977220, at *3. That notion ought to be, to put it mildly, uncontroversial. *See* Fed. R. Civ. P. 33(a)(2)("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)(". . . either party may compel the other to disgorge whatever facts he has in his possession."); *Am. Needle, Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012)("[Plaintiff] is entitled to know the theories under which the . . . Defendants are proceeding and the factual basis of their contentions."); *Auto Meter Prod., Inc. v. Maxima Techs. & Sys., LLC*, No. 05 C 4587, 2006 WL 3253636, at *2 (N.D. Ill. Nov. 6, 2006)(noting that "after considerable discovery . . . courts routinely compel the resisting party to answer" contention interrogatories that "require the answering party to commit to a position and give factual specifics supporting its claims."); *Bell v. Woodward Governor Co.*, No. 03 C 50190, 2005 WL 8179365, at *2 (N.D. Ill. Sept. 8, 2005)(". . . the court does not intend to reject as overly broad or unduly burdensome all of Defendant's contention interrogatories that seek the underlying facts and supporting materials of Plaintiffs' case.").

That being said, it doesn't mean the propounding party must be allowed to "go crazy." Courts have the obvious and necessary discretion to rein in parties from asking for every fact and

piece of evidence that supports a contention. It is generally enough that a responding party offers the principal or material facts that support its contentions. *See, e.g., Segerdahl Corp. v. Ferruzza*, No. 17-CV-03015, 2018 WL 11199218, at *4 (N.D. Ill. Mar. 9, 2018); *Am. Needle*, 2012 WL 4327395, at *2; *Fox v. City of Austin*, No. 1:22-CV-00835-DAE, 2023 WL 6119383, at *5 (W.D. Tex. Sept. 18, 2023); *Santillan v. Verizon Connect, Inc.*, No. 21CV1257-H-KSC, 2022 WL 428170, at *2 (S.D. Cal. Feb. 10, 2022); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig*., No. CV14MD2542VSBSLC, 2020 WL 6290584, at *3 (S.D.N.Y. Oct. 27, 2020). Nothing more than material or principal facts should or will be required from the plaintiffs here. Nevertheless, the plaintiffs have some work to do and are going to have to clean up and supplement the answers they provided, and do it properly, without vitriol – which is never helpful and always off-putting to the judge who is forced to read it. *Procaps S.A. v. Patheon Inc.*, 2014 WL 1237553, at *8 (S.D. Fla. 2014). *See, e.g.,* J. Cole, *An Interview with Steve Shapiro,* 23 Litigation, 19, 24 (WINTER 1997).

## III.

There is no need to waste much time parsing and sifting through the parties' back and forth regarding each of the nearly two dozen questions and responses the parties have asked the court to look at for them. Life is short.[7] But, the court will dig into Interrogatories No. 6 to relator and No. 1 to Delaware, and the plaintiffs' responses. That's because they are clearly what started this fight

---

[7] As a reminder, the referral from Judge Seeger was for discovery *supervision*, not for redrafting the parties' discovery requests and responses to both sides' satisfaction. *That* would fall into the category of what some frustrated judges call "hand-holding." *See, e.g., Garrard v. Rust-Oleum Corp*., No. 20 C 00612, 2023 WL 1475164, at *2 (N.D. Ill. Feb. 2, 2023)("The referral from [the district court] was for "discovery supervision," not hand-holding."); *United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, No. 3:15-CV-122 (CDL), 2022 WL 11237724, at *1 (M.D. Ga. Oct. 19, 2022)("... the drafters of the Rules provided a logical, straightforward process that should be easily navigable by good lawyers without extensive hand-holding by the Court, so that discovery can be conducted efficiently, expeditiously, and without unnecessary expense."); *Williams v. Ests. of Hyde Park, LLC*, 2020 WL 5702297, at *1 (N.D. Ill. 2020)("It's just -- I shouldn't have to hand-hold lawyers that are of this caliber to do something like that. All right?").

and because what went on with this little slice of discovery is a good taste of the whole rather unsavory pie the court has been served all along.

The interrogatory asks the plaintiffs to "[i]dentify each employee (current or former) of any Defendant that you contend was both (a) aware that Coram's commercial credit balances were being swept to income; and (b) at the time of the sweep, of the belief that the swept amount was legally required to be reserved for possible future escheatment as opposed to being swept to income." The question is clearly relevant to the element of scienter. The answer ought to be simple, especially in a nearly six-year-old case. But, before we get to the answer – which was a doozy – we need to address one of the defendants' two main expectations as to what the answer should be. The defendants, essentially, want the plaintiffs to accept the defendants' view of the propriety of sweeping, abandon their own view, and wedge their anser into the defendants' theory of the case. [Dkt. #253, at 5]. But, the defendants are ignoring a key phrase in their interrogatory: "that you contend." *See, e.g., In re Sulfuric Acid Antitrust Litig*., 231 F.R.D. 320, 323 (N.D. Ill. 2005) (when reviewing the sufficiency of an answer, "the initial focus is on the question, not the answer, for on the question you ask depends the answer you get"). Plaintiffs' contention is *their* contention. It does not have to satisfy the *defendants*' competing theory of the case. They may wish to argue over what people knew when or whether that can be proven, but that's not an argument for discovery, it's an argument for summary judgement or trial, if this case ever comes to that.

As for the defendants' other expectation, it is completely understandable given the interrogatory. Anyone can see that the plaintiffs' answer ought to have been, as the defendants contend, a list of names of current or former employees. That's a "no-brainer." But plaintiff's

"answer" was a lot more than that. Astonishingly, it was a nine-page document[8 and 9] that reads –

---

[8] The plaintiffs' attorneys tend to be a bit wordy. Unfortunately so. After all, this case began back in September of 2018, with a 127-page, 659-paragraph Complaint which, three versions later, has ballooned into a 183-page, 828-paragraph tome, with another 150 pages of exhibits tacked on. The plaintiffs' response to the defendants' motion to compel runs along similar lines. Sure, it weighs in just under the 15-page limit, but it comes with 21 footnotes that are packed with over 100 lines of small-font text. That probably would have added 4 pages or more of 12-point font text. And, those footnotes are not merely casual asides; they encompass nearly all of plaintiffs' cited legal authorities and accompanying discussions. Dropping so large and so significant a portion of your brief into footnotes certainly does not make it any easier to read and follow, so the "true purpose" of all those footnotes obviously was to get around Local Rule 7.1. *See, e.g.*, *Prod. & Maint. Employees' Loc. 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1407 (7th Cir. 1992)("We have repeatedly warned litigants and attorneys not to use textual footnotes to evade page limits."); *Fleming v. Cnty. of Kane, State of Ill.*, 855 F.2d 496, 498 (7th Cir. 1988)(". . . litigants should not attempt to hide excess text in either an appendix or in footnotes."); *Laborers' Int'l Union of N. Am. Loc. Union No. 783 v. Holland & Hart, LLP*, 715 F. App'x 739 (9th Cir. 2018)(court did not abuse its discretion in sanctioning party for using footnotes to avoid page limits); *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 931 n.1 (N.D. Ill. 2021)("If Defendant had not moved much of its text into footnotes, however, it would have exceeded the page limits by a significant amount."); *Flores v. United Airlines*, 426 F. Supp. 3d 520, 527 n.2 (N.D. Ill. 2019)(". . . plaintiff put most of her citations to case authority in footnotes, making reading her brief unnecessarily difficult and violating the spirit of the page limit. The parties are warned that, in the future, the Court will ignore any citations that the parties put in footnotes."); *In re Rough Rice Commodity Litig.*, No. 11 C 618, 2012 WL 473091, at *1 n.1 (N.D. Ill. Feb. 9, 2012)("In their response brief, Plaintiffs have included extensive single-spaced footnotes that include arguments and a multitude of citations. . . . Plaintiffs' use of footnotes is a blatant attempt to exceed the fifteen-page limit set by Local Rule 7.1 without prior approval of this Court."); *Merix Pharm. Corp. v. EMS Acquisition Corp.*, No. 09C5871, 2010 WL 481247, at *1 n.1 (N.D. Ill. Feb. 4, 2010)("Merix makes excessive use of single spaced block quotations and footnotes in its brief; on any reasonable page layout, Merix's brief would exceed the fifteen-page limit specified in Local Rule 7.1."). Or, perhaps this is just a matter of someone among the plaintiffs' dozen or so lawyers being a David Foster Wallace fan. In either case, the court won't take any action now in regard to plaintiffs' scoffing at the page-limitation requirement, even though it may not have been the first time the plaintiffs have engaged in some page-counting legerdemain. [Dkt. ##107, 110].

[9] And yes, the court has taken no small amount of inspiration from the style of the plaintiffs' response brief throughout this Memorandum Opinion and Order. Plaintiffs might consider the court's extensive use of footnotes in this Opinion as a very mild, oblique sanction in the hopes of inspiring the plaintiffs to take the page limit seriously next time – as courts continually admonish the parties that they must. Page limitations are not to be ignored or evaded. *See, e.g., Prod. & Maint. Employees' Loc. 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1407 (7th Cir. 1992); *Jo.R. ex rel. C.R. v. Garden Grove Unified Sch. Dist.*, 551 F. App'x 902, 904 (9th Cir. 2013); *Varda, Inc. v. Ins. Co. of N. Am.*, 45 F.3d 634, 640 (2d Cir. 1995); *Teague v. Bakker*, 35 F.3d 978, 985 n. 5 (4th Cir. 1994); *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 931 n. 1 (N.D. Ill. 2021); *In re Rough Rice Commodity Litig.*, No. 11 C 618, 2012 WL 473091, at *1 n. 1 (N.D. Ill. Feb. 9, 2012); *Leonardo v. Health Care Serv. Corp.*, No. 09 C 1588, 2010 WL 317520, at *4 (N.D. Ill. Jan. 20, 2010).

improperly – very much like a summary judgment motion.[10] It cannot seriously be argued that what plaintiffs have provided was a proper, straightforward, reasonable[11] answer to a proper, straightforward question. While Fed.R.Civ.P. 59(b) allows a party to "file a motion for summary judgment at any time until 30 days after the close of all discovery," it's a stretch to think that includes filing one in a response an interrogatory. Arguably, one could certainly cull a couple of lists of names out of that novella, and were this a different case with a different history and were the length of this one response the only problem, the court might say to the defendants, the names are in there, move on. But, it's not a different case with a different history and it's not the only problem with the plaintiff's responses.

The plaintiffs' answer to this interrogatory says a lot about the tensions between the two teams of attorneys in this case – tensions with which I have become all too familiar and which have not escaped the attention of Judge Seeger. *See, e.g.,* [Dkt. #280]. It would have been refreshing – but, again, given the history of this case, unlikely – had the plaintiffs been succinct or straightforward.

---

[10] It seems like both sides are champing at the bit to make summary judgment-style arguments. One can hardly blame them. After five and a half years, we're all still stuck in very tedious and rather dull discovery. It should come as no surprise that someone who has been eating broccoli for so very long wants to get to the steak.

[11] Of course, the plaintiffs answer to the defendants' interrogatory, and the plaintiffs' response to the defendants' motion to compel in which they asserted it was a perfectly fine answer came long before all the plaintiffs' attorneys – and defendants' as well – all agreed to be reasonable. [Dkt. #280-283, 285-98, 301-06].

Tellingly, the plaintiffs' response to the defendant's understandable remonstrations[12] regarding their all but interminable answer to the interrogatory serves to highlight the tenor of discovery throughout this case: ". . . if they are only interested in the "list of employees," as their motion suggests, then it would be a simple task for someone on their clerical staff to take a highlighter marker to the response and notate the names of listed individuals." [Dkt. #265, at 8]. Think about that for a moment. That means the plaintiffs knew what a proper answer would have looked like – a list of names of current or former employees – yet made a deliberate decision not to provide one. One might even speculate that they did so with the intent of vexing their opponent and assuring that another discovery dispute is taken to court. Hopefully that wasn't the "true purpose," but the court can't imagine what else might have been, and the long and short of it is the answer is unacceptable.[13]

Compounding the problem with the plaintiffs' response is that they essentially rely on that nine-page answer in their remaining responses. The plaintiffs shouldn't have done that in the first place. Interrogatory responses are supposed to stand on their own. *See, e.g., Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc*., No. 18 C 0825, 2020 WL 1701861, at *7 (N.D. Ill. Apr. 8,

---

[12] For one thing, the defendants call the plaintiffs' answer a "filibuster," which apparently got under the plaintiffs' counsel's collective skin. They call that a "misapplied dysphemism." [Dkt. #265, at 7]. If the plaintiffs are using "dysphemism" in the dictionary sense, they seem to want the defendants to employ only neutral terms to describe the plaintiffs' protracted answer to the defendants' simple request for a list of names. But, in my experience, discovery briefs are often seasoned with dysphemisms, especially in contentious cases like this one. And it's not like the term is terribly derogatory or inapt – the plaintiffs think it is, of course. [Dkt. #265, at 7]. Providing a nine-page answer where a simple list of names was called for, contrary to plaintiffs' take on it [Dkt. #265, at 7] has, in fact, caused delay. The answer, itself, takes longer to read and review – for the defendants and for the court – and by lodging an answer like that in a case like this, the plaintiffs essentially guaranteed that defendants would file a motion to compel regarding it and that the court, once again, would have to intervene. That, in "common parlance", constitutes a fair amount of delay.

[13] See what the court means about policing the hidden motivations of attorneys? *Supra,* at 7.

13

2020)(parties "may not incorporate by reference other interrogatory responses, deposition testimony, or documents except to the extent permitted by Rule 33(d)."); *Ropak Corp. v. Plastican, Inc*., No. 04 C 5422, 2006 WL 1005406, at *4 (N.D. Ill. Apr. 17, 2006) ("An interrogatory answer should stand on its own, be complete, and not refer to pleadings, depositions, other documents, or other interrogatories, especially when such references make it impracticable to determine whether an adequate answer has been given without [a] cross-checking comparison of answers."). But, even if sending the reader cross-checking other answers, back-and-forth, was acceptable[14], those other responses are, essentially, tainted by plaintiffs' choice in regard to Interrogatories Nos. 6 and 1.

Here's an example: Again, the proper answer to Interrogatories Nos. 6 and 1 would have been nothing more than a list of names. But, again, the plaintiffs' answer went well beyond that, and not in a good way. Indeed, at certain points in the plaintiffs' improper, legal-memorandum-style answer, the reader is directed to clusters of Bates-numbers. Those types of references to documents were obviously completely unnecessary to answer Interrogatories Nos. 6 and 1 and served only to make the defendant's review – and again, inevitably, the court's – more difficult. But, because those document references apparently *are* necessary to the some of the plaintiffs' other responses, as already noted, they referred to their answers to Interrogatories Nos. 6 and 1 as their answers to other interrogatories. So, the relator's response to Interrogatory No. 7, which asks for the "facts that support [plaintiffs'] contentions concerning each employee(s) listed in response to [R-RFI No. 6 /

---

[14] Acceptable or not, there is no question that this "style" makes it more difficult to read and review an answer. It's a bit like having to go back and forth between text and footnotes to get through a brief, only worse. The plaintiffs suggest that they did it this way so they would not make "an already long (69-page) document even longer." [Dkt. #265, at 8]. Given the massive amount of pages of briefs and exhibits the parties have tended to file in this case in nearly every other instance, the court assumes that explanation was given with tongue firmly in cheek and the court appreciates plaintiffs' counsels' joke. There is nothing wrong with a little humor to provide a break in the monotony of this long and tedious discovery war.

D-RFI No. 1]" merely refers the reader to plaintiffs' response to Interrogatories Nos. 6 and 1 which, as just explained, was improper in the first instance. *Beijing Choice*, 2020 WL 1701861, at *7; *Ropak Corp.*, 2006 WL 1005406, at *4.[15]

**IV.**

As with Interrogatories Nos. 6 and 1, the appropriate answer to Interrogatory No. 7 should be obvious. One simply takes the list one ought have provided in its previous response and distributes the principal facts and pieces of evidence among each individual name. So, for Danny Claycomb and David Falkowski, for example, one might indicate that they have scienter as a result of Deloitte's September 5, 2013 due diligence draft or Deloitte's September 24, 2013 due diligence draft or both. And it looks like other due diligence reports went to other people, so it doesn't seem like plaintiffs' proof of scienter is the same for everyone. Then, one provides the explanation or theory – which had no place in the answer to Interrogatories Nos. 6 and 1 – as to why the various documents provided each of the various individuals with scienter. It could be done once for each report as there's no rule against referring back to earlier parts of an answer.

There is no reason the plaintiff could not have broken down the due diligence reports and emails and meetings or whatever it claims demonstrate scienter for each employee it listed. That way, one can know what facts support scienter for what employee. The relator thinks such an exercise would be "silly" or "risible." Would it be a bit tedious? Of course, but much of what the plaintiffs complain about in terms of burden and "regurgitation" stems from the reality of filing an

---

[15] When one tries to describe in writing what the plaintiffs expected the defendants and the court to do in order to sift through all their interrogatory, going back-and-forth from this answer to that, it sounds even more frustrating and needlessly time-consuming than it actually is. But, it's frustrating and needlessly time-consuming enough. The title of one of Judge Gettleman's articles says its best: We can do better. Robert Gettleman, *We Can Do Better*, 25 LITIGATION 3 (Summer 1999).

828-paragraph Complaint which was, after all, no one's choice but the plaintiffs. Would it be a bit time-consuming? Sure, but it's not "silly" or "risible" as the relator seems to think, and the relator has had these interrogatories since last Summer. What it would result in is an Answer that is organized, self-contained, and easy to follow. But that is precisely what an Answer should be, especially in a complicated, messy case. A little organization goes a long way. Indeed, it is indispensable if one truly cares about messaging and being understood. While a plaintiff may not want to make things easy for their opponents, what about the court and, perhaps at some point in the future, a jury?[16] The goal of intelligibility should never be forgotten.

Much the same can be said for the plaintiffs' answers to Interrogatories Nos. 8 and 9 to relator, and Interrogatories Nos. 3 and 4 to Delaware. Interrogatories Nos. 8-9 and 3-4 ask:

> For each State named as a real-party-in-interest-plaintiff in this Action (including Delaware), identify the specific amount(s) of credit balances you contend should have been escheated to that State and the date(s) (i.e., month, day, year) on which you contend that amount became subject to escheat.

> Identify all facts supporting your contentions concerning the amounts, dates, and States identified in [R-RFI No. 8 / D-RFI No. 3].

The relator responds that "$145.6M in overpayments [were] swept to income from December 2007–September 2014," and cites 65 documents from which he presumably calculates that figure, and says "this request will be the subject of an expert report." Yes, the parties will, eventually, make their way into expert discovery, and experts will be brought in to give their competing opinions

---

[16] It is not out of line to ask counsel to spare a thought for the folks they expect to decide their cases and resolve their discovery squabbles. But, as the court has sifted through page after page of the parties' seemingly endless submissions regarding their many extensive discovery disputes, the thought has occurred – many times – that a fitting soundtrack to all this might be Cannonball Adderley's 1966 recording of Joe Zawinul's "Mercy, Mercy, Mercy." One is left with the disquieting feeling that all too often the idea is to confuse, not to enlighten.

regarding the final numbers claimed by the parties. But, surely, that eventuality does not excuse the parties, after five and a half years into the case, from having a discoverable assessment of damages. After all, the relator filed the suit and obviously had some basis for concluding that the $145 million damage figure came from and how it is distributed among the states. The obligations mandated by the Federal Rules of Civil Procedure cannot be ignored by the simple expedient of saying there are experts in the case and one must await their testimony. *See, e.g., Tovar Snow Pros., Inc. v. ACE Am. Ins. Co.*, No. 20-CV-01060, 2021 WL 4745376, at *6 n.5 (N.D. Ill. Oct. 12, 2021)(Plaintiff's "request not to provide a detailed computation at this stage is also not well-taken because, again, it must have already categorized its expenses in order to arrive at the $2,259,507.00 claim"). And, while Delaware needn't do the same for all the states identified, it certainly should be able to do it for the claimed escheated balances in Delaware. *See, e.g., Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 420 (7th Cir. 2005)(district judge within discretion to ban evidence after party failed to respond to contentions interrogatory with a description of its damages theory and the proof to be employed); *Tovar Snow*, 2021 WL 4745376, at *6 (". . . contention interrogatories are frequently used to obtain information from plaintiffs about damages theories and methods by which damages are calculated."); *Lac Courte Oreilles*, 2020 WL 7055883, at *1 (". . . positions might evolve as the case progress, but a party that does not disclose its basic legal and factual positions will risk forfeiting those positions under Federal Rule of Civil Procedure 37."). In short, a plaintiff's damage theory may not be crystalized in amber immune from investigation or analysis until some expert opines on damage numbers.

And, a document dump doesn't do the trick. [17] A number of courts have held that, although Fed.R.Civ.P. 33(d) allows parties to respond to interrogatories by referencing business records, that doesn't apply to contention interrogatories. *Culp v. Reed*, No. 119 CV 00106WCLSLC, 2021 WL 1341256, at *3 (N.D. Ind. Apr. 8, 2021); *United States v. Supervalu, Inc.*, No. 11-3290, 2018 WL 3219448, at *2 (C.D. Ill. July 2, 2018); *United States ex rel. Landis v. Tailwind Sports Corp.*, 317 F.R.D. 592, 594-95 (D.D.C. 2016)(collecting cases). That makes sense here, as the defendant should not be made to "answer its own interrogatories by filtering a mass of documentary evidence through an adversary's legal lens." *Landis*, 317 F.R.D. at 594. At the very least, the plaintiffs' should categorize the documents they cite by state and explain where in those documents they get their $145 million estimate.

## V.

Interrogatory No. 10 to relator and Interrogatory No. 5 to Delaware ask the parties to "[i]Identify all facts supporting your contention that Coram's alleged transfer to income of $98 million in credit balances, from January 1, 2011 through June 30, 2013, was done "illegally." TAC ¶ 90." The relator does not answer it at all. He merely incorporates his response to R-RFI No. 6. But the two interrogatories ask different questions; the answer to the former thus cannot be an appropriate answer to the latter. Moreover, it is not at all clear from Relator's filibustering answer

---

[17]The plaintiffs call the defendants' complaint about plaintiffs citing a "large number of documents" – 65 – "risible," because, after all, the defendants have produced over 500,000 documents spanning 7 million pages. [Dkt. #265, at 9]. If memory serves, previously, the plaintiffs did not think that was nearly enough documents. *United States ex rel. Gill v. CVS Health Corp.*, No. 18 C 6494, 2023 WL 2771166, at *2 n.1 (N.D. Ill. Apr. 4, 2023). And, again, the plaintiffs have chosen to file an 828-paragraph Complaint and at some point, one way or another, those 828 chickens come home to roost. And, it bears repeating that expert discovery does not mark the appropriate beginning for extensive analysis of what the Complaint has solemnly charged.

to R-RFI No. 6 what facts he contends support the specific proposition addressed by R-RFI No. 10—the claim that transferring $98M in credit balances, from 2011–2013, was "illegal." Delaware merely repeats the objections that have been dismissed earlier in this discussion.  Again, it is five years into this case. The plaintiffs should be able easily to answer such a question properly, providing their theory and material facts to support it. The same goes for Interrogatory No. 11 to the relator and Interrogatory No. 6 to Delaware.

The relator's answer to Interrogatory No. 12 is sufficient.  Interrogatory 12  asks the relator to '[i]dentify all facts supporting your contention that "CVS knew the specific claims that it paid for excluded provider. TAC ¶ 159."  You should answer separately with respect to CVS Retail, to Omnicare, and to Coram."  The relator explains that all three CVS entities lacked "lacked computer software controls to prevent the submission of claims to government healthcare programs for prescription drugs prescribed by excluded providers."  The relator goes on to claim that:

> Discovery to date has confirmed these allegations. For example, the CVS Pharmacy, Omnicare, and Coram 30(b)(6) deponents each confirmed that these entities lacked automated software controls, during extended periods of time, to prevent the submission of claims for prescription drugs prescribed by excluded providers.

The defendants take issue with the relator's characterization of the deposition testimony and argue that "the absence of automated software controls does not mean the subsidiary knew claims written by excluded providers were, in fact, being processed and paid."  But, a contention interrogatory asks for the opponent's proof and the underlying theory; it obviously does not ask the opponent to wedge its evidence into the other side's theory of the case. And for a party to do so is impermissible under the Rules – although it is an all too common misused gambit in discovery. The relator's theory and proof will be tested at summary judgment or trial, if and when this case ever comes to that. The

claim may even be knocked out with the defendants' pending motion to dismiss. But it cannot be resolved in discovery.[18]

Interrogatory No. 15 asks the relator to:

Identify all facts supporting your contention that CVS Specialty chose not to fund computer software edits preventing the use of copay cards by government beneficiaries for the purpose of encouraging CVS Specialty customers to purchase brand-name drugs rather than generics, TAC ¶ 187; increasing "drug utilization," *id.* ¶ 186; and/or realizing "higher profits," id. ¶ 5. See also TAC ¶ 217.

The relator's answer is another lengthy, motion-for-summary-judgment-style answer, augmented by another document dump. It is designed not to properly elucidate or explain. That's bad enough, but the answer avoids the very core of the question: the defendants' motivation. It is one thing to claim the defendant did something, but it is another to claim what the defendants' motivation for doing that something was. The court notes that, in his response brief, the relator argues that, buried within his prolix response he actually did provide a supporting fact regarding the defendants' motivations. At about the ninth page of the two answers – if one doesn't count the relator's incorporation of his answer to Interrogatory 15 in his answer to Interrogatory 16 which would double the length of the two answers – the relator finally gets around to stating that "CVS's repeated decisions to institute half-measures rather than robust controls were driven by ] concern about CVS's bottom line, including the time and costs associated with making extensive IT edits and frustration with the IT process." That's called burying the lede. If that, as the plaintiffs seem to argue in their response brief, is the answer, why obfuscate it?[19]

---

[18] See what the court means by "champing at the bit?" *See, supra*, fn. 10.

[19] Since the topic is motivation, the impression is, once again, that the plaintiffs' motivation is to make things difficult. It reminds one of the plaintiffs' arguably petulant – pardon the dysphemism – retort

(continued...)

Worse, rather than actually provide the material facts to support that assertion, the relator sends the reader to three documents and excerpts from two depositions. As already made clear, that technique is unacceptable. *See Culp*, 2021 WL 1341256, at *3; *Supervalu, Inc.*, 2018 WL 3219448, at *2; *Landis*, 317 F.R.D. at 594-95 (collecting cases). And, even a little bit worse than that, stating that CVS's decisions to settle for half-measures were driven by the bottom line is nothing more than a rephrasing of the allegation regarding CVS's motivation.[20] The relator's answer to Interrogatory No. 17 suffers from the same or similar flaws. It's a rambling, motion-for-summary-judgment-style answer that never provides material facts that support the relator's theory that the defendants did one thing to justify another. Both of these answers have to be cleaned up to the point of being straightforward or, at least, something approaching straightforward.

## VI.

That brings us to a handful of requests for admissions that the parties are at loggerheads over. The first two are RFAs Nos. 2 and 3:

> RFA No. 2. For each credit balance referenced in the Third Amended Complaint at Paragraphs 50–126, admit that balance represented an actual overpayment to Coram as opposed to only a potential overpayment.

---

[19](...continued)
regarding the very first interrogatory at issue several pages ago: ". . . if they are only interested in the 'list of employees,' as their motion suggests, then it would be a simple task for someone on their clerical staff to take a highlighter marker to the response and notate the names of listed individuals." One supposes that the defendants – and, yet again, the court – could do some sifting and digging with the plaintiffs' answer and get to what plaintiffs now tell us is the real find. But, plaintiffs ought to have known that judges and magistrate judges are not to play archaeologist with the record. *See, e.g. Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731 (7th Cir. 2014); *Jacobs v. Velasco*, 41 F. App'x 882, 883 (7th Cir. 2002); *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir.1999).

[20] In other words, if one asks the plaintiffs what "facts" support their claim that the defendants were motivated only by profit and the answer is, "the defendants were motivated only by profit." The "find", *see supra*, at fn. 19, isn't much of a "find" at all.

21

RFA No. 3. For each credit balance referenced in the Third Amended Complaint at Paragraphs 50–126, admit that balance represented only a potential overpayment to Coram as opposed to an actual overpayment.

The plaintiffs denied both these requests as is allowed under Fed.R.Civ.P. 36(a)(4). The defendants complain that denying both of these requests is a logical inconsistency; but whether that is true is not a matter for a discovery motion. It is clear that the plaintiff has a different theory regarding any dichotomy between actual overpayments and potential overpayments and it's clear that, as before, the defendants are trying to force the plaintiffs to accept the defendants' theory of the case. As such, the denials are sufficient.

Finally, there are RFAs Nos. 16 and 17, which ask:

RFA No. 16: As to each State below, admit that prior to the closing of the CVS-Coram acquisition in January 2014, Coram, either directly or through a corporate affiliate, has escheated unclaimed property to [listed States]:

RFA No. 17: As to each State below, admit that since the closing of the CVS-Coram acquisition in January 2014, Coram, either directly or through a corporate affiliate, has escheated unclaimed property to [listed States]:

In this instance, I must agree with the plaintiffs' objections that the requests, made without time limitation, are hopelessly overbroad. *Art Akiane LLC. v. Art & SoulWorks LLC*, No. 19 C 2952, 2020 WL 6509228, at *4 (N.D. Ill. Nov. 5, 2020)("Discovery requests without time limitations are generally (if not always) overbroad and do not withstand scrutiny."); *Vann-Foreman v. Illinois Cent. R.R. Co.*, No. 19 C 8069, 2020 WL 6262361, at *3 (N.D. Ill. Oct. 23, 2020). The plaintiffs' responses to these two requests will stand.

**VII.**

At the risk of eliciting eye-rolls from both sides' litigation teams that would be all but audible, let me suggest that it might be a good idea to sit down and go through these interrogatories

together with the goal of arriving at answers that are *perhaps not perfect but acceptable* – and not merely to go through the motions. Yes, everyone has grown weary of discovery in this case and weary of meeting and conferring and weary of discovery motions and briefs and weary of court orders and opinions expressing weariness; remember all those declarations filed back in February. The court does not relish the prospect of having to go over plaintiffs' answers to these interrogatories, and defendants' complaints about those answers, again. And so, in conclusion, and circling back to footnote number 16, the court asks the parties and their counsel for a little "Mercy, Mercy, Mercy."[21]

ENTERED: _____
                    UNITED STATES MAGISTRATE JUDGE

**DATE:** 6/17/24

---

[21]It should serve to underscore the impression that the plaintiff's twenty-one footnotes really were a deliberate attempt to get around Local Rule 7.1 – and perhaps aggravate the reader just a little bit. Try as it might, the court was not able to match that without a little cheating and a few more pages. In lieu of a sanction – which might have been a bit much – the court hopes to have conveyed the message that, as difficult as counsel may think this case is, we all must get to the next phase and that goal is not achieved by many-footnoted –and angry – submissions – from either side. Submissions like those from the plaintiffs do not make the task any easier.