## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *ex rel.* MICHAEL GILL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-cv-6494 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CVS HEALTH CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER

Relator Michael Gill brought a sprawling *qui tam* suit against CVS Health Corporation and related entities, advancing dozens of claims under the False Claims Act ("FCA") and related state statutes. *See* Third Am. Cplt. (Dckt. No. 67). Gill alleged that CVS engaged in "five separate schemes" to defraud the United States and state governments through its pharmacy business. *Id.* at ¶ 1.

The third amended complaint was a behemoth, weighing in at 159 pages (plus exhibits) and stretching across 828 paragraphs. The facts alone consumed 309 paragraphs. The complaint included a whopping 41 counts. That's a hefty payload for even the most dedicated reader.

Defendants moved to dismiss, which this Court granted in part and denied in part. *See* Mtn. to Dismiss (Dckt. No. 78); 8/26/24 Mem. Opin. & Order (Dckt. No. 340). For present purposes, the key ruling involved an alleged scheme about copay cards provided by drug manufacturers. This Court dismissed that part of the case.

Gill responded by filing a motion for reconsideration. *See* Mtn. for Reconsideration (Dckt. No. 353). Gill asks this Court to reconsider two parts of its ruling. The first issue

involves the copay cards.  The second issue involves non-Delaware state-law claims about overpayments.

For the reasons explained below, the motion for reconsideration is granted in part and denied in part.

## I.      Copay Cards

Gill asks this Court to reconsider the dismissal of his claim about the copay cards.  Gill contends that CVS violated the FCA by improperly accepting copay cards from government healthcare beneficiaries (meaning customers).  The claim relies on an underlying violation of the federal anti-kickback statute.

At this point, the reader might appreciate a refresher.  So this Court will take a step back.

Gill brings a claim under the False Claims Act, which imposes liability on anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  *See* 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B).  The claim at hand alleges five schemes, including a scheme about copay cards.

Copay cards "may be any form of direct support offered by manufacturers or other third parties to insured patients to reduce or eliminate immediate out-of-pocket costs for specific prescription medications.  They include print coupons, electronic coupons, debit cards, and direct reimbursements."  *See* Third Am. Cplt., at ¶ 174 (Dckt. No. 67).

As the name suggests, a copay card allows someone else – not the patient – to pay the copay when buying medication.  A copay card reduces the financial burden on the patient, because the patient no longer has to pay the copay.  Someone else picks up that part of the tab.

2

According to the complaint, the reduced cost might change the behavior of patients when selecting medication. The reduced cost means that patients might select more expensive brand-name drugs instead of less expensive generic drugs. *Id.* at ¶ 175 ("[T]he use of copay cards allows brand name drugs to be more affordable for patients, and patients often end up choosing brand name drugs with a copay card over less expensive equivalent drugs and/or therapeutic alternatives (even though there is typically not a material therapeutic difference between them)."). By decreasing the financial burden on patients, copay cards enable patients to select more expensive drugs, and thus "increase[] the financial burden on government health care programs and taxpayers." *Id.*

The complaint includes a number of allegations about how the use of copay cards violates the anti-kickback statute. The OIG issued several bulletins in 2005 and 2014, forewarning that copay cards constitute remuneration within the meaning of the anti-kickback statute when the government pays some or all of the cost of the medication. *Id.* at ¶¶ 174–83.

The anti-kickback statute is a criminal fraud statute. *See United States ex rel. Derrick v. Roche Diagnostics Corp.*, 318 F. Supp. 3d 1106, 1112 (N.D. Ill. 2018). It is "designed to prevent Medicare and Medicaid fraud." *See United States v. Patel*, 778 F.3d 607, 612 (7th Cir. 2015). The idea is that health care providers should help patients make decisions in the best interests of health, not based on the provider's pocketbook.

To that end, the anti-kickback statute prohibits "knowingly and willfully" soliciting, receiving, offering, or paying "any remuneration" in return for "purchasing" any federally reimbursed "item." *See* 42 U.S.C. § 1320a-7b(b)(1)–(2); *see also Derrick*, 318 F. Supp. 3d at 1112; *United States ex rel. Suarez v. AbbVie Inc.*, 2019 WL 4749967, at *5 (N.D. Ill. 2019).

3

For present purposes, the most important thing is that the statute includes two different subparts, and they cover different ground. The difference between the subparts looms large in the motion at hand.

In a nutshell, subpart (b)(1) is about soliciting or receiving remuneration. Subpart (b)(2) is about offering or paying remuneration.

Specifically, subpart (b)(1) provides that "[w]hoever knowingly and willfully *solicits or receives* any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind" in return for certain things "shall be guilty of a felony." *See* 42 U.S.C. § 1320a-7b(b)(1) (emphasis added).

Subpart (b)(2) provides that "[w]hoever knowingly and willfully *offers or pays* any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person" in return for certain things "shall be guilty of a felony." *See* 42 U.S.C. § 1320a-7b(b)(2) (emphasis added).

So, subpart (b)(1) is about money in ("solicits or receives"), and subpart (b)(2) is about money out ("offers or pays").

Congress amended the anti-kickback statute in 2010 and forged a connection to the False Claims Act. *See United States ex rel. Greenfield v. Medco Health Sols, Inc.*, 880 F.3d 89, 95 (3d Cir. 2018). The statute provides that a violation of the anti-kickback statute gives rise to a claim under the False Claims Act. "A claim that includes items or services resulting from a violation" of the anti-kickback statute "constitutes a false or fraudulent claim for purposes" of the False Claims Act. *See* 42 U.S.C. § 1320a-7b(g); *see also Greenfield*, 880 F.3d at 95.

In other words, the statute provides that claims for payment from the government are "false" under the False Claims Act if the claims involve underlying illegal kickbacks. *See*

4

*Greenfield*, 880 F.3d at 95; *see also Prose*, 17 F.4th at 739 ("The [False Claims] Act makes it unlawful knowingly (1) to present or cause to be presented a *false* or fraudulent claim for payment to the United States, (2) to make or use a *false* record or statement material to a *false* or fraudulent claim, or (3) to use a *false* record or statement to conceal or decrease an obligation to pay money to the United States.") (emphasis added).

The complaint at hand invokes that framework when it comes to copay cards. Specifically, the complaint alleges that CVS violated the FCA by accepting copay cards paid by drug manufacturers. Basically, the copay cards allegedly violated the anti-kickback statute, so CVS couldn't accept them for purchases of medications paid in part by the federal government.

"CVS pharmacies have unlawfully accepted copay cards from pharmaceutical manufacturers and other third parties to pay for prescription drugs funded by government programs. This conduct violates the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b (the 'AKS'), state anti-kickback statutes, and the False Claims Acts. Copay cards improperly induce beneficiaries to order certain drugs, increase costs to government programs, and are detrimental to government healthcare programs." *See* Third Am. Cplt., at ¶ 5 (Dckt. No. 67).

The complaint alleges that CVS dropped the ball by failing to have safeguards that screened the unlawful use of copay cards. "CVS could easily implement computer software edits to prevent the improper use of these copay cards. Still, they have declined to do so in pursuit of higher profits." *Id.*; *see also id.* at ¶ 183 ("Defendants failed to implement screening or other adequate safeguards to prevent the unlawful use of copay cards on government programs.").

5

In its motion-to-dismiss ruling, this Court read the complaint to allege that CVS is liable for the unlawful *payment* of copays by the drug manufacturers. That reading didn't come out of nowhere.

Again, the statute in question includes two subparts. Subpart (b)(1) is about soliciting or receiving remuneration. Subpart (b)(2) is about offering or paying remuneration.

The complaint expressly alleged that CVS violated subpart (b)(2). In fact, paragraph 39 expressly quoted that entire subsection. *See* Third Am. Cplt., at ¶ 39 (Dckt. No. 67) (explaining that the anti-kickback statute bars offering or paying remuneration under "42 U.S.C. § 1320a-7b(b)(2)").

Noticeably missing was any reference to subpart (b)(1). The complaint didn't mention subsection (b)(1) at all.

Gill said the same thing in response to the motion to dismiss. In his brief, Gill cited subsection (b)(2), but made no mention of subsection (b)(1).

Gill wrote: "Because Plaintiffs' copay-card . . . claims are premised upon violations of the [anti-kickback statute], Plaintiffs must also plead, with respect to those claims: (1) an *offer* or *provision* of 'remuneration'; (2) 'to induce' referrals of goods and services . . . 42 U.S.C. § 1320a-7b*(b)(2)*." *See* Pl.'s Mem. in Opp. to Mtn. to Dismiss, at 2 (Dckt. No. 86) (emphasis added).

In other words, the complaint expressly alleged a violation of subpart (b)(2), without mentioning subpart (b)(1). And Gill's response brief invoked subpart (b)(2), without mentioning subpart (b)(1).

So, this Court reached a simple conclusion: the claim about the copay cards is about subpart (b)(2). This Court didn't think that the claim was about subpart (b)(1), because Gill only mentioned subpart (b)(2).

This Court ultimately held that the complaint did not state a claim about the copay cards under subpart (b)(2). *See* 8/26/24 Mem. Opin. & Order, at 39–43 (Dckt. No. 340). Again, that provision is about offering or paying remuneration. But the complaint didn't allege that CVS paid the copay cards. The *drug manufacturers* did. *See* Third Am. Cplt., at ¶ 174 (Dckt. No. 67).

By the look of things, the complaint tried to hold CVS liable under the False Claims Act for a violation *by the drug manufacturers* of subpart (b)(2) of the anti-kickback statute, meaning the provision governing unlawful *payments*. The claim was about payments – but CVS didn't pay anything.

As best as this Court could tell, it looked like some type of derivative liability, for a simple reason. Without derivative liability, CVS couldn't be directly liable for the payment of copay cards when the copay cards were paid by someone else.

That's what this Court meant when it spoke about a predicate violation in its motion-to-dismiss ruling. Subpart (b)(2) is about the payment of remuneration. But CVS didn't pay anything – the drug manufacturers, not CVS, paid the copay cards. CVS can't be liable for an unlawful payment *by the drug manufacturers* under subpart (b)(2) unless that payment was unlawful under subpart (b)(2). That is, CVS can't be on the hook for an unlawful payment by others unless the payment by others was, in fact, unlawful.

Based on that understanding, the Court dismissed the claim. The complaint didn't allege a violation by the drug manufacturers because it didn't allege that they knowingly and willfully

paid remuneration in violation of the statute. And if there was no primary liability by the drug manufacturers, then there could be no derivative liability by CVS.

That's the backstory, and we've now arrived at the motion for reconsideration.

In his motion for reconsideration, Gill offers a reframing – if not an airbrushing – of the claim about the copay cards, with a splash of hyperbole. *See* Mtn. for Reconsideration (Dckt. No. 353).

The motion faults the ruling for requiring a "predicate violation" of the anti-kickback statute by the drug manufacturers. *See* Pl.'s Mem. in Supp. of Mtn. for Reconsideration, at 1 (Dckt. No. 354). But again, this Court didn't pull that understanding out of thin air. After all, Gill is the one who alleged a violation *of the provision about paying remuneration* under subpart (b)(2).

CVS couldn't be liable for *paying* remuneration – when it *didn't pay* any remuneration – unless the theory involved some type of derivative liability. Without derivative liability, it's hard to hold CVS liable for paying remuneration when someone else paid the remuneration.

In the next breath, Gill attempts to reframe the claim in his motion for reconsideration. For the first time, Gill argues that CVS violated both subpart (b)(1) *and* subpart (b)(2).

"The AKS [*i.e.*, the anti-kickback statute] imposes liability on any entity that knowingly '*pays*,' '*offers*' or '*receives* any remuneration' directly or indirectly in return for purchasing or ordering prescription drugs paid for by a government healthcare program or to induce any person to do so. 42 U.S.C. § 1320a-7b*(b)(1)-(2)*." *Id.* (emphasis added).

After citing both subparts for the first time, Gill argues that "CVS violated the AKS in at least two ways." *Id.* Importantly, Gill made clear that he is attempting to hold CVS directly

liable for *CVS's* own violation of the anti-kickback statute, not a violation of that statute by the drug manufacturers. *Id.*

"First, CVS *received* tens of millions of dollars in copay card payments from manufacturers and other third parties to facilitate the ordering and purchase of prescription drugs paid for by the government. Second, CVS *offered and paid* indirect remuneration to patients to induce them to order hundreds of millions of dollars of drugs paid for by the government." *Id.* (emphasis added).

A few pages later, Gill quotes both subpart (b)(1) *and* subpart (b)(2), as if the claim was about both subparts all along. "An entity violates the AKS if it either knowingly: (1) '*receives* any remuneration … in return for … arranging for … purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program; or (2) '*offers or pays* any remuneration … directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person … to purchase … [or] order any … item' where a government healthcare plan will provide any payment. 42 U.S.C. § 1320a-7b*(b)(1) and (2)*." *Id.* at 6 (emphasis added).

As an aside, it is a bit jarring – and a bit much – for Gill to expressly invoke subpart (b)(1) for the first time in a motion for reconsideration. After all, the complaint is 159 pages long and contains 828 paragraphs. Gill said a lot – but when he had the chance, he didn't say anything about CVS violating subpart (b)(1).

Putting that aside, this Court took another look at the complaint, setting aside the heavy gloss applied by Gill in his motion for reconsideration. More specifically, this Court looked to see whether Gill ever alleged that CVS *received* unlawful remuneration, and whether CVS *offered* unlawful remuneration.

In several spots, the complaint does allege that CVS unlawfully accepted copay cards. For example, when introducing the copay scheme in paragraph five, the complaint alleges that "CVS pharmacies have unlawfully *accepted* copay cards from pharmaceutical manufacturers and other third parties to pay for prescription drugs funded by government programs." *See* Third Am. Cplt., at ¶ 5 (Dckt. No. 67) (emphasis added).

Almost 180 paragraphs later, the complaint once again alleges that CVS "improperly *accepted*, and continue[s] to accept, copay cards for government beneficiaries." *Id.* at ¶ 184 (emphasis added); *see also id.* at ¶ 186 ("In accepting copay cards, CVS Pharmacies gain an edge over competitor pharmacies that follow the law."); *id.* at ¶ 187 ("Thus, CVS Pharmacies are further incentivized to accept – and did accept – copay cards for Copaxone and other brand name drugs because of the substantial rebates CVS receives.").

The verb "accept" is only a stone's throw away from the verb "receive." And subsection (b)(1) is about receiving remuneration.

When reading the complaint, the description of the conduct matters more than the citations to the statutory provisions. The alleged conduct sounds like it could fit within the text of subpart (b)(1) – meaning an illegal receipt of money – even though Gill didn't explicitly cite that provision of the statute.

Gill could have done a lot more, and done a lot better, if he intended to bring a claim under both subsections. Gill cited only one of the two subparts, which created the impression that the claim involved only one subsection.

At the motion-to-dismiss stage, this Court believed that Gill was alleging that the acceptance of copay cards made CVS liable *for violating subpart (b)(2)* based on the unlawful

*payments* by the drug manufacturers. That is, it looked like Gill was trying to hold CVS liable for payments by someone else. That's why this Court dismissed the claim.

But it is possible to read the allegations another way. The complaint could be read to allege that CVS violated *subpart (b)(1)* by *receiving* remuneration by accepting the copay cards, without getting into whether the drug manufacturers also violated *subpart (b)(2)* by paying remuneration through the copay cards.

A district court shouldn't have to go to such great lengths to try to figure out what a plaintiff is trying to allege. A district court shouldn't have to parse verbs to try to figure out what a claim is about, especially when the complaint and the brief don't lend a hand. That's especially true when a complaint is 159 pages long and contains over 800 paragraphs.

A different conclusion applies to the theory that CVS *offered* remuneration. The statutory phrase is "offers or pays any remuneration." *See* 42 U.S.C. § 1320a-7b(b)(2). That phrase means pays, or offers to pay. *See U.S. v. Miles*, 360 F.3d 472, 479 (5th Cir. 2004) (noting that the anti-kickback statute requires showing a defendant "made a payment or offer of payment"); *U.S. v. Teva Pharms.*, 2019 WL 1245656, at *9 (S.D.N.Y. Feb. 27, 2019) (same); *Pogue v. Diabetes Treatment Centers of Am.*, 565 F. Supp. 2d 153, 160 (D.D.C. 2008) (same); *U.S. v. Kahn*, 768 F. App'x 266, 268 (5th Cir. 2019) (unpublished) (same).

The complaint doesn't allege that CVS offered remuneration to patients. If anything, the complaint alleges otherwise. Gill alleged that the *drug manufacturers* offered remuneration through the copay cards.

"Copay cards may be any form of direct support *offered by manufacturers or other third parties* to insured patients to reduce or eliminate immediate out-of-pocket costs for specific prescription medications." *See* Third Am. Cplt., at ¶ 174 (Dckt. No. 67) (emphasis added).

11

In his motion for reconsideration, Gill argues that "[t]he allegations clearly establish that CVS 'offered' illegal remuneration to ineligible Medicare and Medicaid patients in the form of copay cards that CVS applied to the patients' cost-sharing obligations." *See* Pl.'s Mem. in Supp. of Mtn. for Reconsideration, at 6 (Dckt. No. 354). But Gill offers no supporting citation to the complaint.

At best, the complaint alleges that "[s]tarting in 2014, CVS Specialty began proactively offering copay card assistance with each patient interaction." *See* Third Am. Cplt., at ¶ 5 (Dckt. No. 67). It's hard to say what "copay card assistance" means. Whatever it means, the complaint does not suggest that CVS offered to pay the copays itself.

To sum it all up, Gill didn't cite subpart (b)(1) in the complaint or in response to the motion to dismiss. Gill cited only subpart (b)(2). By citing subpart (b)(2), and *only* subpart (b)(2), Gill led everyone (including this Court, and CVS) to believe that the claim was about subpart (b)(2).

But in his motion for reconsideration, Gill argues for the first time that CVS violated subpart (b)(1) by receiving remuneration. Gill should have said so – loud and clear – at the motion-to-dismiss stage. Still, it's possible to read the complaint that way, even though Gill didn't say so expressly. So that theory is fair game.

That's not true of the new theory that CVS offered remuneration in violation of subpart (b)(2). The complaint did not allege that CVS offered remuneration, meaning that CVS itself offered to pay something through the copay cards. And it's too late in the day to amend the complaint to add a new theory.

A district court can revisit its orders before the entry of final judgment. Interlocutory orders "may be revised at any time before the entry of judgment adjudicating all the

12

claims." *See* Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012).

"A party may not raise an argument for the first time in a motion for reconsideration." *See RCBA Nutraceuticals, LLC v. ProAmpac Holdings, Inc.*, 108 F.4th 997, 1005 (7th Cir. 2024). "Motions for reconsideration cannot be used to introduce new legal theories for the first time." *Beezley v. Fenix Parts, Inc.*, 2019 WL 666754, at *2 (N.D. Ill. 2019) (internal citation omitted); *see also Jones v. Illinois State Toll Highway Auth.*, 502 Fed. Appx 587, 594 (7th Cir. 2013).

"A motion for reconsideration cannot be used to introduce new legal theories for the first time, to raise legal arguments that could have been heard during the pendency of the previous motion, or to present evidence that could have been adduced during the pendency of the original motion." *Belbis v. County of Cook*, 2003 WL 187407, at *1 (N.D. Ill. 2003); *see also Publishers Res., Inc. v. Walker–Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985).

Legitimate grounds for a motion for reconsideration include the court's misunderstanding of "a party's arguments, or a party's contention that the court ruled on an issue that was not properly before it." *See United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

A complaint needs to give fair notice to the defendants, and to the Court, about the nature of the claim. So, if Gill intended to bring a claim under both subsections, then he must file an amended complaint that cites both subsections.

The Court grants Gill leave to file a fourth amended complaint no later than two weeks from the date of this order. The leave is limited to adding a citation to subsection (b)(1), and any other changes necessary to make the limited point that the complaint alleges a violation of that subsection of the anti-kickback statute. If Gill wants to allege that CVS received remuneration in

13

violation of subpart (b)(1) of the anti-kickback statute by accepting the copay cards, now's the time.

This Court is not granting leave to make any other changes or to amend the complaint for any other purpose. This Court is not granting leave to add a new theory that CVS *offered* remuneration in violation of subsection (b)(2). That ship has sailed.

Needless to say, this Court is not giving its blessing to any claim that CVS received remuneration within the meaning of the statute. This Court hasn't addressed that issue, and isn't doing so now.[1] Instead, this Court is simply allowing Gill to expressly allege a violation of subpart (b)(1). That's a fair reading of the complaint, even though Gill suggested otherwise through misdirection.

Ordinarily, this Court would not give leave to amend the complaint so late in the game, especially given that Gill has already had multiple opportunities to do so. But here, this Court is simply granting leave to clarify what was arguably in the complaint in the first place (albeit with great obscurity because of the lack of a citation, and the presence of a citation to a different subsection). This Court sees no prejudice caused by sharpening the allegations for the sake of clarity.

## II.    Non-Delaware State-Law Claims about Overpayments

Gill also seeks clarification of this Court's ruling about the first scheme, meaning the allegation that CVS failed to return overpayments.

---

[1] In their briefs on the motion for reconsideration, the parties touched on whether accepting copay cards means that CVS "receive[d]" remuneration within the meaning of the statute. But the briefing was too cursory for this Court to resolve that question at this stage.

The alleged scheme had two components. First, the complaint alleged that CVS failed to return overpayments to the federal government. So, the federal government allegedly paid too much, and CVS didn't return the money.

Second, the complaint alleged that CVS received overpayments from commercial entities, and then failed to escheat those funds to state governments. So, CVS got too much money from commercial entities, and should have eventually sent it to state governments. But CVS kept it instead.

That's two different theories. One theory is about a failure to return overpayments to the federal government. The other theory is about a failure to escheat overpayments by commercial entities to state governments. *See* Pl.'s Mem. in Supp. of Mtn. for Reconsideration, at 13 (Dckt. No. 354) ("Scheme #1 involved Defendants' failure to return overpayments and had two distinct components: (1) failure to return *government* overpayments directly to government payors and (2) failure to escheat *commercial* overpayments to state governments, including Delaware.") (emphasis in original).

This Court previously ruled that the complaint stated a claim under the (federal) False Claims Act about keeping overpayments by the federal government. *See* 8/26/24 Mem. Opin. & Order, at 19–23 (Dckt. No. 340). This Court also ruled that the complaint stated a claim under the Delaware statute for the failure to escheat commercial overpayments (not government overpayments) to that state. *Id.* at 23–31. This Court also dismissed claims under other state statutes. *Id.* at 31–32.

Gill now seeks clarification about the first theory. Gill wants to confirm whether this Court dismissed any *state-law* claims about government overpayments (as opposed to

15

commercial overpayments, which is the second theory). The parties offer competing views about what Gill alleged in the complaint, and what CVS moved to dismiss.

According to Gill, the complaint alleged that CVS violated *both* the federal False Claims Act *and* state statutes when CVS failed to return government overcharges. Gill points out that CVS never moved to dismiss any state-law claims about government overcharges. So, as Gill sees things, those state-law claims survived. *See* Pl.'s Mem. in Supp. of Mtn. for Reconsideration, at 13–15 (Dckt. No. 354).

As Gill put it: "Relator seeks clarification regarding the Court's dismissal of Relator's state law claims concerning Defendants' failure to escheat *commercial* overpayments to states other than Delaware. Defendants maintain that the Court also dismissed the non-Delaware state law claims as to their failure to return *government* overpayments to the states (for example, state Medicaid program overpayments). This is an argument Defendants did not make and that the Court did not directly address, other than holding that government overpayment claims survive under the federal FCA. Relator's position is that government overpayments involve both state and federal monies (for example, Medicaid is jointly funded by the states and the federal government) and thus both state and federal FCA claims survived Defendants' motion to dismiss." *Id.* at 3 (emphasis in original).

CVS sees things much differently. According to CVS, the complaint never alleged that CVS violated *state* statutes when CVS failed to return government overcharges.

Instead, the complaint merely alleged that CVS violated the federal False Claims Act. So, CVS didn't move to dismiss any state-law claims about a failure to return government overcharges because there *were no* state-law claims about a failure to return government overcharges. And this Court's ruling didn't reach that question because the state-law claims

16

didn't exist in the first place.  *See* Defs.' Mem. in Opp. to Mtn. for Reconsideration, at 11–14 (Dckt. No. 368).

As CVS put it:  "In his Motion, Gill also (at 13-15) attempts to plead new credit balance-related claims under the guise of seeking 'clarification.'  Contrary to Gill's revisionist history, his Complaint did not clearly allege any state false claim involving the failure to repay government overpayments.  Instead, its 'failure-to-repay-government overpayments' theory (as distinct from its 'failure-to escheat commercial overpayments theory) focused on a federal cause of action and not on state causes of action."  *Id.* at 11.

This Court took a second, close look at the complaint.

This Court started with the table of contents.  Section I of the complaint is about the first scheme, meaning the overpayments.  The section heading reads:  "CVS and Coram Concealed and Avoided Their Obligations to Return and Escheat Overpayments in Violation of the False Claims *Act*," singular.  *See* Third Am. Cplt., at i, 15 (Dckt. No. 67) (emphasis added).

When describing the first theory (about government overpayments), the complaint spoke in the singular, and seemed to address only the federal False Claims Act.  The heading of the subsection invoked only federal law:  "CVS' Concealment and Failure to Return Government Overpayments Violates *the False Claims Act*."  *Id.* at i, 34 (emphasis added).

But when describing the second theory (about commercial overpayments), the complaint spoke in the plural, and expressly referred to state statutes.  The heading of the subsection invoked only state law:  "CVS' Concealment and Failure to Escheat Commercial Overpayments to Delaware Violates *State False Claims Acts*."  *Id.* at i, 35 (emphasis added).

So, by the look of things, the claim about government overcharges fell under the federal False Claims Act (only). And the claim about the commercial overcharges fell under state statutes.

The content under each heading supports that inference. In the summary about overpayments by the government, the complaint cited only federal law. *Id.* at ¶ 52. But in the summary about overpayments by commercial entities, the complaint cited "Delaware and other state escheatment laws." *Id.* at ¶ 53.

The paragraphs that followed cemented the point. The section about government payments cited only federal law. *Id.* at ¶¶ 106–110. One paragraph alleged a violation of "31 U.S.C. § 3729(a)(1)(G)." *Id.* at ¶ 110. A nearby sentence alleged that "CVS and Coram violated the FCA." *Id.* The very first paragraph of the complaint defined "FCA" as the federal False Claims Act.

The section about overpayments by the government did not allege that CVS violated any state statue by failing to return the money. Instead, the complaint repeatedly alleged that CVS violated the federal False Claims Act.

The final paragraph of the entire section lumped everything together. "Because CVS Specialty and Omnicare ACS unlawfully kept government and commercial overpayments, Defendants violated the False Claims Acts and state escheat laws." *Id.* at ¶ 136.

That's too slender of a reed to support Gill's characterization of the complaint. That sentence combined everything all in one. It covered both the theory about government overcharges and the theory about commercial overcharges.

18

If you're looking for a clear allegation in the complaint that government overcharges violated *state* statutes, as well as the federal False Claims Act, you need to look elsewhere. And then, the reader comes up empty. You can't find what's not there.

The same conclusion applies to Gill's brief in response to the motion to dismiss. Gill argued that the failure to return government overpayments "violates *the FCA*." *See* Pl.'s Mem., at 2 (Dckt. No. 86) (emphasis added). And then, Gill argued that the failure to escheat commercial overpayments "violated the *Delaware False Claims and Reporting Act*." *Id.* at 3 (emphasis added).

So, the complaint and the response brief sung from the same hymnal. Each time, Gill alleged that the failure to return government overpayments violated the federal False Claims Act. An allegation that the failure to return government overpayments also violated state statutes is nowhere to be found.

Maybe Gill could have alleged a violation of state statutes, too, when it came to government overcharges. But he didn't. Gill cannot amend the complaint and add new legal theories under the guise of a motion for reconsideration. *See Belbis v. County of Cook*, 2003 WL 187407, at *1 (N.D. Ill. 2003).

It's far too late to add new legal theories. On June 17, 2022, this Court originally set a fact discovery deadline of June 12, 2023. *See* 6/17/22 Order (Dckt. No. 62). This Court later extended the fact discovery deadline a few times, at the parties' request. *See, e.g.*, 4/20/23 Order (Dckt. No. 153); 8/28/23 Order (Dckt. No. 192). Gill did not express any interest in alleging that the government overcharges violated state statutes until he moved for reconsideration on September 18, 2024, after more than two years of discovery. It's too late, too costly, too burdensome, and too disruptive to add new claims and new theories.

19

Gill points out that the complaint "repeatedly alleged that Defendants improperly retained both Medicare and Medicaid overpayments." *See* Pl.'s Mem. in Supp. of Mtn. for Reconsideration, at 14 (Dckt. No. 354). And Medicaid (unlike Medicare) is "jointly funded by the federal and state governments." *Id.*

That's true. But that's neither here nor there. The fact that both the federal government and state governments contribute to Medicaid does not mean that Gill brought claims under state law. The issue is not the source of the funding for Medicaid. The question is whether Gill ever alleged that CVS violated state law – as opposed to federal law – by failing to return overcharges by the government. The answer is no.

To tie a ribbon on it, this Court clarifies its prior ruling as follows. This Court did not dismiss any claim that government overcharges violated state statutes, for a simple reason. The complaint does not allege that government overcharges violated state statutes. So any claim about government overcharges violating state statutes isn't part of this case.

### Conclusion

For those reasons, Gill's motion for reconsideration is granted in part and denied in part.

For the third scheme (about copay cards), this Court grants Gill leave to file a fourth amended complaint to add an express allegation that CVS violated subpart (b)(1) of the anti-kickback statute when it received copay cards. This Court is not granting leave to amend the complaint in any other respect or for any other purpose. The Court rejects the belated attempt to add a new allegation that CVS violated subpart (b)(2) of the anti-kickback statute by offering copay cards.

For the first scheme (about overcharges), the Court concludes that the complaint does not allege that government overcharges violated state statutes. Any such claim is not part of the case.

Date: July 30, 2026

Steven C. Seeger
United States District Judge

21